(PRIZE.)

## The George, The Bothnea, and The Janstaff.

*In cases of joint or collusive capture, the usual simplicity of the prize proceedings is necessarily departed from ; and where, in these cases, there is the least doubt, other evidence than that arising from the captured vessel, or invoked from other prize causes, may be resorted to.*

APPEAL from the circuit court for the district of Massachusetts.

These were British vessels captured and brought in by the private armed vessels the Fly and the Washington, and libelled as prize of war. In each of them the United States interposed a claim, charging that the capture was collusive, and that the whole property ought, on that account, to be forfeited to the United States. In each case the captors applied for permission to make farther proof. In that of the George, it was allowed in the district court, and partially received ; but the application to make still further proof, and to introduce into the record testimony already taken, was rejected in the circuit court, and was again offered in this court. In the two last cases farther proof was refused, both in the district and circuit courts. In all the cases, the vessels and cargoes were condemned to the United States, and from each of these sentences of condemnation the captors appealed to this court.

The first case was argued by *Dexter* and *G. Sulli-van*, for the appellants and captors, and by the attorney-general, for the United States. The two last by *Winder*, and *Harper* for the appellants and captors, and by *Dexter* and *Pinkney*, for the United States.

MARSHALL, Ch. J., delivered the opinion of the court as follows:

The first question to be discussed is, the propriety of allowing farther proof. It is certainly a general rule in prize causes that the decision should be prompt; and should be made, unless some good reason for departing from it exist, on the papers and testimony afforded by the captured vessel, or which can be invoked from the papers of other vessels in possession of the court. This rule ought to be held sacred in that whole description of causes to which the reasons on which it is founded are applicable. The usual controversy in prize causes is between the captors and captured. If the captured vessel be plainly an enemy, immediate condemnation is certain and proper. But the vessel and cargo may be neutral, and may be captured on suspicion. This is a grievous vexation to the neutral, which ought not to be increased by prolonging his detention, in the hope that something may be discovered from some other source, which may justify condemnation. If his papers are all clear, and if the examinations *in preparatorio* all show his neutrality, he is, and ought to be, immediately discharged. In a fair transaction this will often be the case. If any thing suspicious appears in the papers, which involves the neutrality of the claimant

in doubt, he must blame himself for the circumstance, and cannot complain of the delay which is necessary for the removal of those doubts. The whole proceedings are calculated for the trial of the question of prize or no prize, and the standing interrogatories on which the preparatory examinations are taken are framed for the purpose of eliciting the truth on that question. They are intended for the controversy between the captors and the captured; intended to draw forth every thing within the knowledge of the crew of the prize, but cannot be intended to procure testimony respecting facts not within their knowledge. When the question of prize or no prize is decided in the affirmative, the strong motives for an immediate sentence lose somewhat of their force, and the point to which the testimony *in preparatorio* is taken, is no longer the question in controversy. If another question arises, for instance, as to the proportions in which the owners and crew of the capturing vessel are entitled, the testimony which will decide this question must be searched for, not among the papers of the prize vessel, or the depositions of her crew, but elsewhere, and liberty must, therefore, be given to adduce this testimony. The case of a joint capture has been mentioned, and we think, correctly, as an analogous case. Where several cruisers claim a share of the prize, extrinsic testimony is admitted to establish their rights. They are not, and ought not to be, confined to the testimony which may be extracted from the crew. And yet the standing interrogatories are, in some degree, adapted to this case. Each individual of the crew is always ask-

ed whether, at the time of capture, any other vessel was in sight. Notwithstanding this, the claimants to a joint interest in the prize, are always permitted to adduce testimony drawn from other sources to establish their claim. The case before the court is one of much greater strength. The captors are charged with direct and positive fraud, which is to strip them of rights claimed under their commissions. Even if exculpatory testimony could be expected from the prize crew, the interrogatories are not calculated to draw it from them. Of course, it will rarely happen that testimony taken for the sole purpose of deciding the question whether the captured vessel ought to be condemned or restored, should furnish sufficient lights for determining whether the capture has been *bona fide* or collusive. If circumstances of doubtful appearance occur, justice requires that an opportunity to explain those circumstances should be given; and that fraud should never be fixed on an individual until he has been allowed to clear himself from the imputation, if in his power.

Under these impressions, the case must be a strong one, indeed; the collusiveness of the capture must be almost confessed, before the court could think a refusal to allow other proof than is furnished by the captured vessel justifiable. In the cases before the court there are certainly many circumstances of great suspicion, but none which do not admit of explanation.

In the case of the *George*, captured by the privateer Fly, the circumstances relied on to prove the collusiveness of the capture are,

1st. The force of the Fly.   2d. The shipping articles.   3d. The cargo of the George.   4th. The number of her crew.   5th. The place, and other circumstances of her capture.   6th. The sending the mariners on shore, instead of bringing them into the United States.

First. The force of the Fly may probably neither require nor admit of explanation.

Second. The shipping articles unquestionably furnish ground of suspicion.   But some light may be thrown on this point by testimony showing whether it was, or was not, common for small cruisers in the bay of Fundy to give wages to the crew instead of prize money.   It may be of still more importance to determine whether each of the crew, like Gilley, who was examined, was to receive twenty dollars in addition to his wages, for each prize.

Third. Respecting the cargo it is not probable that farther testimony can be adduced.

Fourth. Respecting the number of mariners on board the captured vessel the court would require some further information.   On the one part it is asserted that they are insufficient, and on the other that they are sufficient for the alleged voyage. There is no evidence which can incline the court the one way or the other.

Fifth. On the place and other circumstances of capture further information may certainly be given. The George appears to have sailed from St. Johns, New Brunswick, for the Havanna, on the 8th, and to have been captured in Long-Island harbour, at anchor, on the 13th of January, 1814.   The distance

1816.

The
George.

between these places is said to be five hours' sail, with a favourable wind and tide. Where did she linger during this interval? Was she in Etang harbour during any part of the time? Why did she leave that harbour? Did she expect a convoy? Did a convoy sail about that time? Was it usual for vessels to wait for a convoy at the island of Grand Menan? Could a vessel be descried from the sea lying at anchor in Long Island harbour? Satisfactory answers to these questions might certainly throw some light on this part of the case, and better enable the court to form an opinion on it.

Sixth. It may not, perhaps, be easy to account for not bringing in the crew. Yet it would contribute, in some degree, to the elucidation of the transaction, if the practice in that part of the country could be laid before the court. It might also be of some importance to know whether the sum of 100 dollars was usually paid by government for every merchant seaman brought into the country, whether he was a British subject or the subject of a neutral power.

In the cases of the *Janstaff* and the *Bothnea*, there are some points to be explained which are common to those cases with the George, and some which are peculiar to themselves.

Of the latter class are the inquiries,

First. Whether it frequently happened that unarmed vessels, without a convoy, sailed from that port, either for New London, or for any other port of the United States, or for a foreign port?

Second. What is the character, and what the occupation, of the two passengers who were found, one on board the Bothnea, and the other on board the Janstaff? Are they acquainted with the coasts in, or about, Long-Island sound? Are they capable of being supercargoes? How came they at Halifax?

In both cases it will be desirable to know, whether any previous acquaintance existed between the captors and the owners of the captured vessels, and whether the captors had had any previous communication with the places from which the captured vessels sailed. In the cases of the Janstaff and Bothnea, all the circumstances attending the capture will be important. If, as is not expected, any farther or better reason can be given for putting the whole crew on shore, it may throw some light on the cases. Each case depends, in some degree, on the points which have been suggested. They are stated for the purpose of showing, that points, on which the judgment of the court may, in some degree, depend, are susceptible of explanation, and, therefore, ought to be explained so far as it may be in the power of the parties to explain them. It is not, however, intended to confine them to the particular points which have been stated. Full liberty is given to both parties to adduce farther proof on every point in the case.

Farther proof ordered.