BOSTON EXCELSIOR COMPANY

*vs.*

BANGOR AND AROOSTOOK RAILROAD COMPANY.

Piscataquis.    Opinion June 1, 1899.

*Railroads. Fires. Negligence. License. R. S., c. 51, § 64. R. S., Mo. § 2165; Rev. Code, Iowa, 1897, § 2056.*

It is provided by the statutes of this state that "when a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responsible for such injury and it has an insurable interest in the property along the route for which it is responsible, and may procure insurance thereon. But such corporation shall be entitled to the benefit of any insurance upon such property effected by the owner thereof, less the premium and expense of recovery."

In an action on the case to recover damages for the destruction of the plaintiff's property by fire communicated by a locomotive engine operated and owned by the defendant, the plaintiff claimed to recover; first, by virtue of this statute; and secondly, at common law for the negligent condition and management of the defendant's locomotive engine.

A portion of the property destroyed consisted of split poplar wood, a part of which, estimated by the jury in a special finding at two hundred cords, was piled upon the defendant's land and the balance upon the adjoining land of the plaintiff. The railroad company contended that the plaintiff was a trespasser in thus piling its poplar on the defendant's land and permitting it to remain there after the defendant had requested its removal; and also claimed that inasmuch as the fire was first communicated to this portion of the wood so piled on defendant's land and spread therefrom destroying the other property of the plaintiff, it was not liable for any of the property thus destroyed. The jury returned a special finding upon this issue, that the poplar on the defendant's land, at the time of the fire, was there under the license or consent of the defendant; and also, returned a general verdict for the plaintiff in the sum of $4966.10, exclusive of insurance effected on the property of the owners, to the amount of $3100.

It appeared that from August, 1895, to May, 1896, the time of the fire, no intimation was given by the station or other agent of the defendant, that the plaintiff's foreman was expected to remove the wood. Under these circumstances and upon this evidence *it is considered by the court* that the plaintiff's foreman was justified in assuming that the defendant acquiesced in such continued occupation of the land, and that the special finding of the jury on this point is warranted by the evidence.

*Held;* That the testimony of the land surveyor and engineer called by the plaintiff, with other corroborating evidence, was sufficient to authorize the jury to find that no part of the wood was piled within the defendant's roadway. But if the land on which the wood was piled was occupied by the plaintiff under the license of the defendant, then such occupation was lawful, and the plaintiff's rights and the defendant's liability with respect to injury by fire from a locomotive, are the same as they would be if the plaintiff was the owner of the land.

*Held;* That, under these circumstances, even where the action is founded on the common law liability of the defendant for the negligence in the management of its trains, the great weight of authority, both American and English, supports the proposition that a land owner is not justly chargeable with contributory negligence for such reasonable and legitimate use of his own land.

*Held;* That after a careful examination of all the facts in the case having any material relation to the question of negligence on the part of the plaintiff that if the defendant was entitled to the instruction "that the plaintiff cannot recover in this action because it was guilty of contributory negligence in depositing its wood in such close proximity to the railroad track with full knowledge of the danger from fire to which it would be subjected,"—still, there was sufficient evidence to authorize the finding of the jury that the

plaintiff was not guilty of negligence, or if so, that it did not contribute as a proximate cause to the loss of the plaintiff's property.

The fact that the destroyed property was located near the line of the railroad does not deprive the owners of the protection of the statute; certainly if it was placed where it was under a license from the defendant; and the doctrine of contributory negligence is not applicable to this class of cases.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action on the case to recover damages for the loss of real and personal property belonging to the plaintiff company and alleged to have been destroyed by fire communicated by a locomotive engine then owned and operated by defendant company. Part of the personal property destroyed consisted of split poplar wood of which there was several hundreds of cords and which was piled in part upon the defendant's land and in part upon the adjoining land of the plaintiff. The plaintiff claimed that it had a lawful right to pile its poplar wood upon defendant's land as licensee, claiming that right by virtue of a long continued prior use of said premises for piling purposes and an alleged acquiescence therein by defendant company. The defendant contended that such license, if any could be implied, was revoked by its notifying and directing the plaintiff company not to pile said poplar upon its land and claimed that the plaintiff company in piling said wood was a trespasser and that, as to so much of said wood as was upon defendant's land, it was unlawfully there.

Evidence was introduced by the defendant tending to show that the fire which consumed plaintiff's property was first communicated to the pile of wood standing upon defendant's land next nearest the railroad track and that it spread therefrom to the other piles of poplar wood, destroying the same together with other property.

The defendant claimed that, if the plaintiff's wood which was first consumed was unlawfully upon its land and was destroyed, the plaintiff could not recover for its destruction or for the destruction of other property of which it was the primary cause. Plaintiff claimed the right to recover upon two grounds; first, under the statute; second, at common law, alleging the defective condition of defendant's locomotive and that the same was negli-

gently, improperly and carelessly managed and operated, and that by reason thereof fire was communicated therefrom to its property and it was thereby destroyed. Upon the plaintiff's right to recover under the statute, if its wood was wrongfully upon the railroad location or railroad land, the court instructed the jury as follows:

"I instruct you that the statute only contemplates liability for such property as is lawfully and not wrongfully wherever it may be, but lawfully where it may be burned as in this case upon the company's own land. So that upon the counts which set forth the statute liability, as I say, I instruct you that the plaintiff cannot recover for so much of the wood as was within the railroad land if it was there wrongfully, but that would be only a small portion perhaps of the entire amount of wood destroyed; and I instruct you further, that the plaintiff can recover for the balance under the statute cause of action, if the placing of the wood where it was did not contribute to the injury.

"I am speaking now of the wrongful act, and I say to you, they cannot recover for wood which was wrongfully upon the railroad location at the time of the fire under these counts; but they can recover, other things being proved, for so much of the wood and property as was on plaintiff's own land, providing the wrongful act of the plaintiff in permitting the wood to stay there and be there at the time of the fire did not contribute to the injury, and some things I have said in regard to contributory negligence in the former instance, apply equally well in this."

Upon the plaintiff's right to recover at common law, if the wood was wrongfully placed upon the defendant's land, the court instructed the jury as follows:

"But if the railroad company was guilty of negligence in allowing their train to be run, causing it to be run, or allowing the engine to be out of order in the particulars set forth in the writ and by that negligence the fire was occasioned, then you have got to proceed a step further. If the plaintiff contributed to the injury by the wrongful placing of the wood where it was, then the plaintiff cannot recover.

"If the wrongful placing of the wood did not contribute to the injury and it was occasioned by the negligence of the defendants as alleged in the plaintiff's writ, then the plaintiff may recover even for the wood which was wrongfully on the railroad land."

Defendant requested the court to give the following instruction:

"Defendant asks the court to instruct the jury that if any wood of plaintiff was on defendant's land by trespass, and the fire from the engine went either through the air or along the ground and first set fire to plaintiff's wood thus on defendant's land then the plaintiff cannot recover."

This requested instruction the court declined to give. To these several instructions of the court to the jury and its refusal to give said requested instruction, the defendant took exceptions. The whole charge of the court to the jury, together with the special findings of the jury, is included in the report of the case.

The jury returned a verdict of $4966 for the plaintiff.

*H. Hudson* and *F. E. Guernsey* for plaintiff.

*F. H. Appleton* and *H. R. Chaplin,* for defendant.

As to the destruction of the wood which was piled in trespass upon the defendant's land, the defendant is not liable under the statute because the wood destroyed was not lawfully "along its route."

Nor would it be liable at common law unless it was proven that the injury was wilfully or wantonly inflicted by the defendant company.

A railroad corporation owes no duty to trespassers anywhere within its location beyond abstaining from reckless and wanton conduct towards them. *McCreary* v. *Boston & Maine R. R.,* 156 Mass. 316; S. C. 153 Mass. 300, and cases cited.

This is the general rule as laid down by nearly all the courts of last resort in the country, where injury is done to the person of a trespasser,—and we assume, of course, that no stricter rule would obtain where the injury or damage done was to the property of a trespasser.

No action will lie for an injury to person or property by reason of negligence or want of due care, unless it is shown that there is

some obligation or duty towards the plaintiff which the defendant has left undischarged or unfulfilled.  *Sweeny* v. *Old Colony R. R.* 10 Allen, 372.

The defendant company owed no duty to this plaintiff who was a trespasser and cannot be held liable unless it is shown that it was guilty of wanton and willful or reckless conduct.  3 Elliot on Railroads, 1233; *Phila., etc., R. R. Co.* v. *Weiser,* 8 Pa. St. 366; *Frost* v. *Eastern R. R.,* 64 N. H. 220; *Nolan* v. *New York, etc., R. R.,* 53 Conn. 416.

It is not alleged nor claimed that the injury or damage was wilfully or wantonly inflicted, and no statement of facts was established which can be the foundation of such a contention.  So that, at common law as well as under the statute, the defendant company is not liable for the destruction of the wood piled in trespass upon its land.

This is an action brought by a trespasser to recover for the destruction of property which in part was rightfully on its own land, and in part wrongfully on defendant's land.  It was all destroyed by one and the same fire which started in the wood wrongfully on defendant's land, toward which the defendant company owed no duty or obligation, except not to wilfully or wantonly inflict injury thereon.  The fire so started, spread to the property rightfully on plaintiff's land, and destroyed it.  The trespasser was the owner of all the property so consumed.  The injury was made possible only by the owner's own wrong.  For these reasons, we submit no recovery can be had by the plaintiff company in this action, either under the statute or at common law for the wood or other property rightfully upon its own land, which was destroyed by the fire kindled in and spreading from the wood piled in trespass upon defendant's land.

Finally, plaintiff company cannot recover because it was guilty of contributory negligence in depositing its wood in a place of known danger.

The plaintiff having placed his lumber in a dangerous place with the full knowledge of the danger, was guilty of contributory negligence and cannot recover.  *Post* v. *Buffalo, etc., R. R. Co.,* 108 Pa. St. 585.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, WISWELL, STROUT, FOGLER, JJ.

WHITEHOUSE, J. This is an action on the case to recover damages for the destruction of the plaintiff's property in the town of Milo, May 21, 1896, by fire communicated by a locomotive engine then owned and operated by the defendants.

Section sixty-four of chapter fifty-one of the revised statutes declares that "when a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responsible for such injury, and it has an insurable interest in the property along the route for which it is responsible, and may procure insurance thereon. But such corporation shall be entitled to the benefit of any insurance upon such property effected by the owner thereof, less the premium and expense of recovery."

In the writ the plaintiff claims to recover in the first place by virtue of the absolute responsibility imposed upon the defendant by this statute, and secondly by reason of the liability of the defendant at common law on the ground of negligence respecting the condition and management of its locomotive engine.

A portion of the plaintiff's property destroyed consisted of a large quantity of split poplar wood, a part of which, estimated by the jury in a special finding at two hundred cords, was piled upon the defendant's land, and the balance upon the adjoining land of the plaintiff. The defendant's right of way at the point in question was sixty-six feet in width, and it had acquired by purchase an additional strip of land, known as the Moore land, adjoining its location on the easterly side. The plaintiff's evidence tended to show that the most westerly tier of the wood was thirty-three feet from the centre of the main line of the railroad, and hence that no part of the poplar wood piled on the defendant's land was within the defendant's right of way, but that all of said two hundred cords was on the "Moore land" adjoining the right of way. On the other hand the testimony of the defendant tended to show that the westerly line of the poplar was nearly eight feet within the limits of the location.

It was not controverted by the defendant, however, that these piles of poplar wood were "along the route" of the defendant's railway, and had all the conditions of permanency in their character requisite to establish the responsibility of the defendant under the statute, if the other elements of statute liability were shown to exist. *Thatcher* v. *Maine Central Railroad Co.*, 85 Maine, 502. But it was earnestly contended, in behalf of the defendant company, that in thus piling its poplar on the defendant's land, and in permitting it to remain after a request by the defendant for its removal, the plaintiff was a trespasser on the defendant's land; and inasmuch as the fire was first communicated to the most westerly tier of wood, and thence spread to the other property of the plaintiff company, that the defendant is not responsible, either for the wood thus wrongfully piled on its lands or for any part of the property thus destroyed. The plaintiff sharply controverted this position, claiming that it had a lawful right to use the defendant's land for a piling ground to the extent shown by virtue of an uninterrupted use of the premises for that purpose with the license and permission of the defendant company for twelve years prior to the time in question, and that such license was never revoked by the defendant. Whether or not such license was revoked in August, 1895, by a notice from defendants not to pile any more wood there, and to remove such part of that already piled as was found to be on the defendant's land, was an issue of fact submitted to the jury, and they returned a special finding that the poplar on the defendant's land, at the time of the fire, was there by the license or consent of the defendant. The jury also returned a general verdict for the plaintiff in the sum of $4966.10, exclusive of insurance effected on the property by the owners, to the amount of $3100.

The case now comes to the court on exceptions by the defendant, and also on a motion to set aside the verdict and special finding as against the evidence.

I. In regard to the special finding that the poplar was on the land of the defendant company by its license and consent, it was not seriously controverted that the land in question had been used

as a piling ground for lumber by the permission of the defendant company for more than ten years prior to August, 1895; but in regard to the alleged revocation of such license and a request to remove the wood already piled there, the testimony is somewhat conflicting. The defendant's station agent, Drake, who had charge of the yard, testifies that in August, 1895, he notified the plaintiff's foreman, Moore, after he had piled up a portion of the westerly tier of poplar, that he must remove his wood from the company's land, as it was proposed to extend the platform at that point, and he had not left sufficient room for the teams to go around. Moore admits that a conversation took place between Drake and himself about that time, in regard to the proposed extension of the company's platform, and the space required for it, but denies that he was ordered to remove the wood already piled there or forbidden to pile more there, and states that he then told Drake that if the wood was on the company's land and it was needed for the platform he was there with his men ready and willing to remove it. Moore is corroborated by Bradeen who heard the conversation. It is true that three section men, Lyford, Kerr and Hodgkins testify that the next day a further notice of similar purport to that given by Drake was given to Moore by Lyford at the request of Cummings, the general manager of bridges and platforms; but Cummings was not called as a witness and Moore denies that he ever received any such notice from Lyford. Neither Drake, Moore nor Lyford appears to have known the location of the dividing line, but it is fairly to be inferred from all the evidence on this branch of the case, that Drake was evidently willing that Moore should continue to pile on the defendant's land as he had been accustomed to do in previous years, unless the wood should be found to interfere with the proposed extension of the platform; and on the other hand if any of the wood was on the defendant's land, Moore was ready and willing to remove it if the space was required for the platform. Such undoubtedly was the mutual understanding of the parties. There was no suggestion from either Drake or Lyford that there was any purpose or desire on the part of the defendant to change the established practice in

regard to the piling ground except upon the contingency of extending the platform. The platform was not in fact extended; the wood remained as originally piled until it was burned in May, 1896; and in the meantime, from August, 1895, to May, 1896, no intimation of any kind appears to have been given by Drake or any other agent of the defendant, that Moore was expected to remove the wood. Under these circumstances and upon this evidence it is the opinion of the court that Moore was justified in assuming that the defendant acquiesced in such continued occupation of the land, and that the special finding of the jury on this point was warranted by the evidence.

The instructions to which the defendant's exceptions were taken related solely to the rights and liabilities of the parties in the event that the wood piled on the defendant's land was wrongfully there. As it is now found to have been lawfully there by consent of the defendant, it becomes unnecessary to consider the exceptions.

II. But the defendant further contends that the plaintiff company cannot recover in this action because it was guilty of contributory negligence in depositing its wood in such close proximity to the railroad track with full knowledge of the danger from fire to which it would be subjected.

The question whether the contributory negligence of a plaintiff, who is not a trespasser, can be successfully invoked in defense of an action founded upon the statute in question, has never been determined by the law court of this state. In every instance in which an instruction has been given to the jury that contributory negligence of the plaintiff was a defense to such an action, the verdict has been for the plaintiff and the law court appears to have had no occasion to reconsider the question as a matter of law. In *Sherman* v. *Maine Central R. R. Co.*, 86 Maine, 422, an action based on the statute, the building destroyed by fire extended on to the location of the defendant's roadway some six or eight feet, and the presiding judge instructed the jury "that if there was a want of ordinary care on the part of the plaintiff in allowing his goods to remain in a building a part of which was within the located

limits of the defendant's roadway, whether there by license or otherwise, and such want of care caused or contributed to the result, the plaintiff could not recover." In the opinion of this court it is said: "Could the railroad company rightfully claim more? · Can the proposition be maintained that the mere fact that one corner of a building, in which goods are kept or stored, extends a few feet over one of the side lines of the roadway (though placed there or permitted to remain there by express license of the railroad company or its officers) will exonerate the company from all liability for injuries to the goods by fire communicated by its locomotive engines? . . . . We think not. The statute contains no such exemption in express terms and we think none is implied;" *Ingersoll* v. *S. & P. Railroad Co.*, 8 Allen, 438, and *Grand T. Railway* v. *Richardson*, 91 U. S. 454, being cited in support of that conclusion. The former case, *Ingersoll* v. *S. & P. Railroad Co.*, was based on a statute of the same purport as our own, and the court said: "There is nothing in this statement to show that any fault of the plaintiff contributed to the loss, if the buildings were lawfully placed where they stood. The fact that a building or other property stands near a railroad, or partly or wholly on it, if placed there with the consent of the company, does not diminish their responsibility in case it is injured by fire communicated from their locomotives. The legislators have chosen to make it a condition of the right to run carriages impelled by the agency of fire, that the corporations employing them shall be responsible for all injuries which the fire may cause." The latter case, *Grand T. Railway* v. *Richardson*, was a writ of error to the circuit court of the United States for the district of Vermont. The action by the defendant in error was founded on a statute of Vermont of the same scope and effect as those in Maine and Massachusetts. Evidence was admitted to show that such of the buildings destroyed as were within the lines of the railway, had been erected there by the license of the company, and exceptions were taken to the refusal of the presiding judge to give the following instructions: "If the jury should find that the erection of the plaintiff's buildings, or the storing of their lumber so near the defendant's railroad track as

the evidence showed was an imprudent or careless act, and that such a location in any degree contributed to the loss which ensued, then the plaintiffs could not recover, even though the fire was communicated by the defendant's locomotive." In their opinion the U. S. Supreme Court say: "We think the court correctly refused to affirm this proposition. The fact that the destroyed property was located near the line of the railroad did not deprive the owners of the protection of the statute, certainly, if it was placed where it was under a license from the defendant. Such a location, if there was a license, was a lawful use of its property by the plaintiff; and they did not lose their right to compensation for its loss occasioned by the negligence of the defendant."

In New Hampshire a statute like ours makes the railroad company liable " for all damage which shall accrue to any person or property by fire or steam from any locomotive or other engine on such road," and gives the company an insurable interest in property exposed along the line. In *Rowell* v. *Railroad,* 57 N. H. 132, it was distinctly held in separate opinions by two of the justices, that the liability thereby imposed is that of insurers, and that the doctrine of contributory negligence does not apply. In the leading opinion of Ladd, J., it is said: "The liability of the railroad is made absolute by statute. No questions of care or negligence on their part is left open. If they throw sparks or fire upon the land of an adjoining owner, or allow fire from their engines to escape upon land of such owner, they are made responsible in the same way as the owner of cattle whose nature it is to rove, is liable for the damage they do in case they escape upon the land of another; and in the same way one is liable for damage caused by filth or noxious odors originating or accumulating upon his land, and passing therefrom to that of another. There is no rule of law that requires the plaintiff to so use his land that it shall not be exposed to injury from the act of another, especially when that act is impliedly forbidden by law. And even without the statute, the throwing of a spark or a coal of fire upon a pile of shavings which I have negligently suffered to accumulate near a house I am building, is as much a trespass as would be the throw-

ing of a spark or coal upon shavings which I have packed away, using ordinary care to ensure their safety." . . . .

So in *Fero* v. *The Buffalo & S. L. R. R. Co.*, 22 N. Y., 215, Bacon, J., says: "It is difficult to maintain the proposition that one can be guilty of negligence while in the lawful use of his own property upon his own premises. The principal contended for by the defendant's counsel, if carried to its logical conclusion, would forbid the erection of any building whatever upon premises in such proximity to a railroad track as would expose them to the possibility of danger from that quarter."

"In *Vaughan* v. *Taff Vale Railway Co.*, 3 H. & N. 750, Martin, B. says (arguendo) : ' It would require a strong authority to convince me that because a railway runs along my land I am bound to keep it in a particular state.' And Bramwell, B. in delivering the opinion of the court in the same case says: ' It remains to consider another point by the defendants. It was said that the plaintiff's land was covered with very combustible vegetation, and that he contributed to his own loss. We are of opinion that this objection fails. The plaintiff used his land in a natural and proper way for the purpose for which it was fit. The defendants come to it, he being passive, and do it a mischief.' . . . .
I think the manifest intention of the legislature was to cast upon the proprietors of railroads the substantial liability of insurers against fire with respect to the property specified ; and that being so the same rule. as to contributory negligence by the plaintiff that obtains between the parties to a fire policy in case of loss, should be applied." In the concurring opinion in *Rowell* v. *Railroad*, supra, Chief Justice Cushing says : "It seems to me that the effect of this legislation is to make the proprietors of a railroad liable as insurers. This construction of the statute makes the liability exactly commensurate with the indemnity which the proprietors are entitled to provide for and to claims under the statute. . . . . Negligence either of the railroad or of the landowner would not, according to the authorities, be a defense to an action by the proprietors to recover on their policy the amount of the loss insured. It would be odd enough if the proprietors could

recover on their policy and then turn round and defeat the property owner on the ground of contributory negligence.  .  .  .  .
The jury ought to have been instructed that no negligence of the plaintiff would discharge the defendants unless so great as to be equivalent to fraud."

In 1887 a statute of precisely the same effect as those above considered was enacted in Missouri. It is section 2165 of the revised statutes of Missouri of 1889, and is substantially a transcript of the Massachusetts act. In 1893 it came before the supreme court of that state for construction in the case of *Mathews* v. *St. Louis & S. F. Ry. Co.*, 121 Mo. 298. At the trial of the cause the defendant company contended, among other grounds of defense, that the plaintiff was guilty of contributory negligence in permitting large quantities of dry grass, leaves, weeds, and other inflammable matter to remain upon his premises adjacent to the railroad and near the buildings destroyed. After considering the evidence and reviewing the authorities applicable to it, the court held that the conduct of the plaintiff in the respect named did not constitute such contributory negligence as would bar the plaintiff of his right of recovery, and added: "But there is another ground upon which this plea should have been denied, and that is by virtue of section 2615 the defendant is made an insurer against fire set by its engines; and it is a familiar rule that contributory negligence, short of fraud, does not furnish any defense to an action by the insured on his policy of insurance, and this was the view taken and enforced in *Rowell* v. *Railroad Co.*, 57 N. H. 132."

In Iowa, under a similar statute, which appears as section 2056 in the revised code of 1877, it was also held by the court of last resort in that state, in *West* v. *Chicago & N. W. R. Co.*, 77 Iowa, 654, that the rule of contributory negligence was not applicable. In the opinion the court said: "The instructions made the defendant liable regardless of the question of contributory negligence.
.  .  .  .  It may be conceded that prior to the statute contributory negligence on the part of the plaintiff in a case like this would defeat his recovery.  .  .  .  .  But the statute we think changed the rule. The statute, we think, was designed to settle a

vexed question upon which the court had been divided.    The language is .clear."

In Wood on Railroads, Vol. 3, page 1602, the author says : " In some of the states railway companies are made liable irrespective of the question of negligence, for fires set by their engines, and as a compensation for this extraordinary liability are given an insurable interest in such property. . . . . Under these statutes the plaintiff is only required to show that the fire was communicated from the defendant's engines ; and no degree of care on the part of the defendants will defeat its liability ; the company's liability is that of insurer, and the contributory negligence of the plaintiff, unless it amounts to actual fraud by an intentional exposure of the property, will not therefore operate as a defense."

So also in 1 Thompson on Negligence, 171, referring to statutes which impose such an absolute .liability on railroads, the author says :   " In an action under them the defense of contributory negligence is not good."

In Michigan the statute of 1872 required every railroad company to erect and maintain fences on each side of its road, and provided that until such fences were duly erected the corporation should be " liable for all damages done to cattle, horses or other animals thereon, and all other damages which may result from the neglect of such company to construct and maintain such fences." In *Flint, &c., Ry. Co.* v. *Lull,* 28 Mich. 510, an action to recover damages sustained before the erection of such fences, it was held that negligence of the plaintiff in the care of his property, contributory to the injury, constituted no defense.   In the opinion of Judge Cooley the court say :  " Were this a common-law action it is clear that such contributory negligence would be a defense. . . . .   But this is not a common law action.   It is an action given expressly by a statute the purpose of which is not merely to compensate the owner of property destroyed for his loss but to enforce against the railway company an obligation they owe to the public. . . . .   And the decisions may almost be said to be uniform that in cases like the present, arising under such statutes, the mere negligence of the plaintiff in the case of his property,

can constitute no defense. . . . . Indeed, if contributory negligence could constitute a defense, the purpose of the statute might be in a great measure, if not wholly, defeated, for the mere neglect of the railway company to observe the directions of the statute, would render it unsafe for the owner of beasts to suffer them to be at large or even on his own grounds in the vicinity of the road, so that if he did what, but for the neglect of the company, it would be entirely safe and proper for him to do, the very neglect of the company would constitute its protection, since that neglect alone rendered the conduct of the plaintiff negligent."

It is undoubtedly true, as stated by the court in *Hussey* v. *King*, 83 Maine, 568, that the rule of contributory negligence "applies only to actions given by the common law, but also to those given solely by statute, where the gist of the action is the default, omission or carelessness of the defendant." Of this class are the actions authorized by statute for damages "suffered through any defect or want of repair in any highway." They are based essentially on the fault of the town in not keeping its ways "safe and convenient." So also is the action based on section 23 of chapter 17 of the revised statutes, which provides that "persons engaged in blasting limerock or other rocks shall before each explosion give seasonable notice thereof;" and makes any person violating this provision "liable for all damages caused by any explosion." Here the ground of liability is obviously an omission or neglect to give the seasonable notice required by the statute, and in *Wadsworth* v. *Marshall*, 88 Maine, 263, it was accordingly held that the rule of contributory negligence on the part of the plaintiff was applicable. See also *Taylor* v. *Carew Manf'g Co.*, 143 Mass. 470.

"There is, however, another class of actions in tort not based on negligence, in which the defendant's care or want of care, is not in issue; in which some direct, positive act of the defendant makes the cause of action. In this class of actions there is no reason nor place for such a rule." *Hussey* v. *King*, 83 Maine, 568, supra.

Actions based on the statute in question in the principal case, making a railroad corporation responsible for loss by fire communicated by its locomotive engine, fall naturally into this class. The

question of the defendant's negligence is not an issue. It is immaterial that the locomotive is equipped with the most ingenious spark arrester that human ingenuity can devise, and its construction otherwise of the most suitable material and approved design. It is immaterial that it is operated and managed in the most skillful and prudent manner known to experienced firemen and engineers. The simple fact that the fire causing the injury was communicated by one of the defendant's locomotive engines is sufficient to establish the cause of action. The absolute liability thereby cast upon the defendant cannot be defeated by proof of the highest possible degree of care in the management of its railroad trains. As a compensation for this extraordinary liability it has been seen that the statute gives the railroad corporation "an insurable interest in the property along the route." No case has been cited by counsel, or otherwise brought to the attention of this court from which it appears that the contributory negligence of the plaintiff has in fact been successfully invoked in defense of an action based upon such a statute, or in which it has been directly determined as a matter of law, by the court of last resort in any state, that the doctrine of contributory negligence is applicable to such an action. The only case cited by counsel for defendant upon this branch of the case is *Post* v. *Buffalo, &c., R. Co.,* 108. Pa. St. 585, and that was an action to enforce the defendant's liability for negligence at common law.

In the case at bar, however, the justice presiding at the trial, in his charge to the jury clearly and distinctly gave the defendant company the full benefit of this rule of contributory negligence. Yet by returning a general verdict for the plaintiff corporation the jury necessarily found as a matter of fact that under the circumstances disclosed by the evidence, there was no want of ordinary care and prudence on the part of the plaintiff corporation in occupying land adjacent to the defendant's roadway in the customary manner, for the purposes of a piling ground; or if there were, that such want of care did not proximately contribute to the destruction of the property.

It is true, as noted at the beginning of this opinion, that there

was a conflict of testimony as to whether any part of the plaintiff's poplar was piled within the defendant's roadway; but the positive testimony of Wm. P. Oakes, the land surveyor and civil engineer, called by the plaintiff, that the westerly tier of poplar, the location of which was still plainly marked by the "remnants of the pile," was thirty-three feet from the centre of the main track, with other corroborating evidence, was sufficient to authorize the jury to find that no part of the wood was piled within the defendant's roadway. The land on which the wood was piled was occupied by the plaintiff by license of the defendant, as it had been occupied by the plaintiff company and its predecessors, for more than ten years prior to that time. It was a lawful occupation, and the plaintiff's rights and the defendant's liability, with respect to injury by fire from a locomotive, were precisely the same as they would have been if the plaintiff had been the owner of the land. *Ingersoll* v. *S. & P. Railroad*, 8 Allen, 438; *Grand T. R. Co.* v. *Richardson*, 91 U. S. 354, supra. Under these circumstances, even when the action is founded on the common law liability of the defendant for negligence in the management of its trains, the great weight of authority in this country and in England supports the proposition that a land owner is not justly chargeable with contributory negligence for such a reasonable and legitimate use of his own land. 3 Wood on Railroads, § 338, and cases cited. "He is not required to anticipate the defendant's negligence, nor to give up the lawful use of his property in such manner as would be deemed prudent under ordinary circumstances. . . . . Neither will the knowledge of an adjacent land owner that engines on the road are habitually so mismanaged or defective as to cause frequent fires upon or near the track, make any difference. Such a fact may add to the evidence of defendant's negligence, but cannot add to the plaintiff's duties." 2 Sherman & Red. on Neg. 5th Ed., § 680. Such ordinary rights of the adjacent land owner are presumably considered in the estimation of damages for the land originally taken for the defendant's roadway.

After a careful examination of all the facts in this case having any material relation to this question of negligence, on the part

of the plaintiff, it is the opinion of the court that if the defendant had been entitled to the instruction given in its favor upon this point, there was sufficient evidence to authorize the finding of the jury that the plaintiff was not guilty of negligence, or if so, that it did not contribute as a proximate cause, to the loss of the plaintiff's property.

The fire appears to have caught from coals falling upon the track and to have been thence communicated through the dry grass to the bottom of the nearest pile of wood; but the defendant had full knowledge, from daily observation, of the location of this wood and of all the existing conditions at that station. And it is a principle of familiar application in cases of negligence where the plaintiff's negligence is also connected with the injury, that if, by the exercise of ordinary care and skill, the defendant might have avoided the injury, the plaintiff's negligence cannot be set up in defense of the action.   2 Wood on Railroads, § 319a; Addison on Torts, 41.   "For however nearly related two negligences may be, the one cannot bar an action for the other unless it is contributory, and although an unseen position might contribute to an accident, a discovered one cannot."   Bishop on Non-Contract Law, § 66.   See also *Davies* v. *Mann*, 10 M. & W. 546; *Grand T. R. Co.* v. *Ives*, 14 U. S. 408; *O'Brien* v. *McGlinchy*, 68 Maine, 557; *Pollard* v. *Maine Central R. Co.*, 87 Maine, 51; *Atwood* v. *Orono, &c., R. Co.*, 91 Maine, 399.   It was a question between two corporations, with respect to which the deliberations of the jury would not probably be influenced by sympathy or prejudice, and this court would not be warranted by the facts in setting aside their verdict.

*Motion and exceptions overruled.*